IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

FILED
FEB - 2 2016
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CR. NO. 3:15CR163 |
| ) | |
| MORRIS CEPHAS, SR., ) | Conspiracy |
| ) | 18 U.S.C. § 371 |
| CHIROYA CEPHAS, ) | (Count 1) |
| a.k.a. Chiroya Screen, ) | |
| ) | False And Fraudulent Claim |
| and, ) | 18 U.S.C. §§ 2 and 287 |
| ) | (Count 2) |
| ) | |
| CEPHAS INDUSTRIES, INC., ) | Theft of Government Property |
| ) | 18 U.S.C. §§ 2 and 641 |
| Defendants. ) | (Count 3) |
| ) | |
| ) | False Statements and Documents |
| ) | 18 U.S.C. §§ 1001 and 2 |
| ) | (Counts 4-7) |
| ) | |
| ) | Fraudulent Monetary Transactions |
| ) | 18 U.S.C. §§ 1957 and 2 |
| ) | (Counts 8-9) |

## SUPERSEDING INDICTMENT

FEBRUARY 2016 TERM - At Richmond

THE GRAND JURY CHARGES THAT:

### BACKGROUND

1. At all relevant times, defendant Morris Cephas, Sr., was the President and CEO of Cephas Industries, Inc., located in the Richmond, Virginia, area.

2. At all relevant times, defendant Chiroya Cephas, a.k.a. Chiroya Screen, was the Vice

[1]

President/ CFO for Cephas Industries, Inc.

3. At all relevant times defendant Cephas Industries, Inc.[CII], was a Virginia corporation doing business in the Eastern District of Virginia in the Richmond, Virginia area. CII operated as a construction and demolition waste recycling business that began operations in 1995, and at all times was located in the Richmond, Virginia area.

4. The United States Department of Energy administers federal funds and grants to state agencies pursuant to the American Recovery and Reinvestment Act (Recovery Act), with ongoing reporting and monitoring requirements to supervise and oversee the grants through state agencies.

5. One part of the Recovery Act grant program is grants for biomass energy projects.

6. The Virginia Department of Mines, Minerals and Energy (DMME) is an agency of the Commonwealth of Virginia, and a grantee of the federal government for biomass energy projects under the Virginia Biomass Energy Grant Program (Biomass Energy). Biomass Energy, funded by the Recovery Act, provided incentives to diversify Virginia's energy supply sources, reduce dependence on foreign oil, and mitigate the effects of climate change.

## COUNT 1
## (Conspiracy)

7. Paragraphs 1 through 6 of this Indictment are realleged as if fully set forth herein.

**The Conspiracy and Its Object**

8. From March 12, 2010, through and including November 16, 2014, in the Eastern District of Virginia and elsewhere, defendants Morris Cephas, Sr. and Chiroya Cephas, did knowingly conspire, confederate and agree with each other, and persons known and unknown to the grand jury, to devise and intend to devise a scheme and artifice to defraud the U.S. Department of Energy and the Virginia DMME, and to obtain for themselves money by means of materially

false and fraudulent pretenses, representations, and promises and to use false clams, statements, and documents, to further the scheme to defraud, in violation of Title 18, United States Code, Sections 287, 371, 641, 666, 1001 and 1957.

**Nature and Purpose of the Conspiracy**

9. The nature and purpose of the conspiracy was for Defendants to enrich themselves by receiving money for their personal benefit by submitting false and fraudulent claims, misappropriating property, and making false statements.

**Manner and Means of the Conspiracy**

10. Among the manner and means by which the defendants and their co-conspirators would and did carry out the conspiracy were the following:

    a. falsify, conceal and cover up by trick, scheme and device a material fact in violation of 18 U.S.C. § 1001(a)(1);

    b. make materially false, fictitious, and fraudulent statements and representations in violation of 18 U.S.C. § 1001(a)(2);

    c. make and use false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries in violation of 18 U.S.C. § 1001(a)(3);

    d. make and present to a department and agency of the United States a upon and against the United States knowing such claim to be false, fictitious and fraudulent in violation of 18 U.S.C. § 287;

    e. embezzle, steal, purloin and knowingly convert to their own use, and without authority sell, convey and dispose of money and things of value of a department and agency of the

United States in violation of 18 U.S.C. § 641;

  f. being agents of CII, an organization which received in one year benefits in excess of $10,000 under a Federal program involving a grant and other form of Federal assistance, obtain by fraud and otherwise without authority knowingly convert to the use of themselves, and intentionally misapply property that is valued at $5,000 and more, and is under the care, custody and control of the organization, in violation of 18 U.S.C. § 666; and,

  g. knowingly participate in the transfer of the proceeds of a specified unlawful activity, that is: a scheme and artifice to deprive the U.S. Department of Energy and the Virginia DMME of money in violation of Title 18, United States Code, Section 641, within the Eastern District of Virginia, and there and then did knowingly engage and cause another to engage in monetary transactions in criminally derived property that was of a value greater than $10,000 and was derived from said specified unlawful activity, and that affected interstate and foreign commerce, in violation of 18 U.S.C. § 1957.

**Overt Acts**

11. In furtherance of the conspiracy, and to achieve the objects thereof, the defendants committed the following overt acts within the Eastern District of Virginia and elsewhere.

12. On or about March 12, 2010, CII was selected by DMME to participate in Biomass Energy, and entered into a contractual agreement with DMME, valued at $500,000, to support an Open-Loop Biomass Manufacturing Project through March 31, 2012.

13. At all times the defendants knew and understood ,and were responsible for compliance with, all of the terms and conditions of Recovery Act fund grants, the contractual agreement and its Special Terms and Conditions, which provided continued Federal supervision,

oversight, and stewardship concerning Recovery Act grant funds, required compliance with the applicable statute and Federal regulations, required segregating, tracking and maintaining Recovery Act funds apart and separate from other revenue streams, and provided no Recovery Act funds could be commingled with any other funds or used for a purpose other than that of making payments for allowable costs of the biomass project.

14. At all relevant times CII maintained a bank account at Branch Banking & Trust (BB&T), with defendants Morris and Chiroya Cephas having signature authority for the account.

15. Pursuant to the award grant contract's terms, on July 30, 2010, October 4, 2010, November 22, 2010, and July 2, 2012, the defendants submitted four invoices regarding the project to the state administering agency, DMME, resulting in a total disbursement to CII Industries, Inc., under the contract of $465,521.06.

**Misappropriation of Grant Funds for Non-Project Purposes**

16. Almost immediately after receiving the project disbursement, the defendants began converting substantial amounts of the disbursements to non-project expenses. On October 19 and 26, 2010, the defendants transferred $120,497.22 from the CII Industries Inc. Recovery Act segregation account ending in 3838, to a non-Recovery Act-related bank account controlled by the defendants ending in 3663, with eight of the nine transactions occurring on October 19, 2010.

17. Almost immediately after the diversion of project funds, the defendants began using the funds for their personal benefit on non-project expenses including:

 a. on October 20, 2010, a payment to the U.S. Treasury (IRS) for their personal delinquent taxes paid via check totaling $63,352.06;

 b. on October 20, 2010, a payment to the U.S. Treasury (IRS) for their personal

delinquent taxes paid via check totaling $2,158; and,

   c. on October 26, 2010, a payment to the U.S. Treasury (IRS) for their personal delinquent taxes paid via check totaling $4,745.

18. On December 28, 2010, the defendants' bank account with number ending in 3663 was closed due to "overdraft closeout."

**Excavator Transaction**

19. On September 28, 2010, Chiroya Cephas, Vice-President/ CFO, on behalf of CII, requested $200,000 in Recovery Act funds from DMME for a down payment towards the purchase of an excavator from a construction equipment dealer in Ashland, Virginia, for the project to "cover contractual site work expenses" under Biomass Energy.

20. The defendants obtained a purchase quote for construction equipment from the dealer and then provided the purchase quote to DMME in a monthly invoice submission on October 4, 2010, which materially and falsely misrepresented the purchase price negotiated between CII and the equipment dealer for the excavator to be $209,475.

21. On October 18, 2010, as a result of the false purchase quote submitted to DMME, CII received a Recovery Act reimbursement disbursement of Federal grant funds totaling $417,927.66 from DMME, and deposited the disbursement into the CII Branch Banking & Trust (BB&T) account.

22. On October 18, 2010, Cephas wrote a check to James River Equipment Virginia, LLC (JRE) to purchase one excavator bearing identification number FF200DX510293 for $184,241, but at all times continued to conceal the true purchase price from DMME. In fact, CII purchased the aforementioned excavator from JRE for $115,500 as opposed to the $209,475 purchase price

[6]

CII falsely reported to DMME. The overpayment totaling $93,975 was used by the Cephases for personal benefit to include payment towards delinquent James River Equipment Virginia, LLC accounts, as well as for equipment repair unrelated to the Recovery Act project, in that $68,741 was paid by CII to JRE for delinquent bills and equipment repair, of which $21,762 was paid towards the balance on a John Deere credit account; $20,000 was applied towards maintenance for a 655 Crawler Loader, which was equipment unrelated to the Recovery Act project; and $26,979 was applied towards an open CII account held by JRE.

23. On January 18, 2011, the Cephases illegally and in violation of the project agreement resold the aforementioned excavator back to JRE without DMME or Department of Energy consent for $85,000, which the Cephases then misappropriated for personal purposes as follows:

    a. $5,000 was applied towards a JRE account controlled by CII; and

    b. $80,000 was received via check by defendant Morris Cephas, Sr., and converted to the defendant Cephases' personal benefit, including;

        1) on January 19, 2011, rental property payments via BB&T Cashier's check # 5002988814 for Cephas' residence at Staples Trace Rd. to Long & Foster totaling $3,500;

        2) on January 19, 2011, loan payments via BB&T Cashier's Check # 5002988815 to REDC Community Capital Group, Inc. totaling $10,000;

        3) on January 19, 2011, cash withdrawals totaling $31,636;

        4) on January 24, 2011, delinquent taxes paid via check to the U.S. Treasury (IRS); totaling $2,000; and,

        5) on February 22, 2011, delinquent taxes paid via check to the U.S. Treasury (IRS); totaling $2,000.

**Mack Truck Transactions**

24. On November 19, 2010, CII entered into a purchase agreement with Colonial Truck Sales, Inc. of Ashland, VA, to acquire a 2004 Mack truck bearing vehicle identification number 1M1AE06Y74NO19799 for $30,109.

25. On November 22, 2010, CII provided this purchase agreement to DMME along with monthly invoice submissions and requested a disbursement for the expense.

26. On December 7, 2010, CII received a Recovery Act reimbursement check from DMME totaling $30,088.51 for the purchase of the truck.

27. On December 14, 2010, CII used the Recovery Act funds from DMME to purchase the Mack truck from Colonial Truck for $30,088.51.

28. On April 4, 2011, approximately four months after purchase, the defendants illegally and in violation of the project agreement sold the aforementioned truck to Southeast Truck Center, Inc. of Ashland, VA, for $23,500 without DMME or Department of Energy consent.

29. The defendant Cephases subsequently converted the sales proceeds to the defendants' personal benefit including:

    a. on April 8, 2011, loan payments via check to REDC Community Capital Group, Inc. totaling $2,500;

    b. on April 15, 2011, rental property payments via BB&T Cashier's check # 5002989032 for the defendants' residence at Staples Trace Rd. to Long & Foster totaling $3,500; and,

    c. on April 22, 2011, delinquent taxes paid via check to the U.S. Treasury (IRS); totaling $2,000.

[8]

**Final Closing Report**

30. As required by the grant award, during the period of grant performance the defendants provided both monthly and quarterly financial reports to DMME.

31. On June 30, 2012, the grant period of performance ended, which required the defendants file a final closing report with DMME.

32. On or about June 27, 2012, DMME notified defendants Morris and Chiroya Cephas by email that a final closing report was due to DMME concerning the project.

33. On July 2, 2012, and supplemented by defendant Chiroya Cephas' emails on July 11, 2012, and July 12, 2012, in order to conceal the sale of the equipment and misappropriation of the funds, CII provided a final closing report to DMME knowingly and falsely stating that both the excavator and Mack truck that were purchased using Recovery Act funds remained in the defendants' possession, and intentionally misrepresented acquisition costs, seeking further reimbursement for $20,387.44. Further, the report as supplemented by the emails, listed an outstanding balance regarding services performed by a contractor associated with the project which the defendants never paid.

34. On July 30, 2012, as a result of the false and fraudulent final closing report, CII received a disbursement of $17,504.89, which the defendants subsequently converted to their personal benefit, including:

    a. on July 30, 2012, an online payment to Chiroya Cephas' Capital One credit card for $986.30;

    b. on July 31, 2012, rental property payments via BB&T Cashier's check ## 5004803470 & 5004803471 for Cephas' residence at Staples Trace Road to Long & Foster

totaling $8,450;

   c. on August 22, 2012, an online payment to Chiroya Cephas' Capital One credit card for $100.00; and,

   d. on September 6, 2012, rental property payments via BB&T Cashier's check # 5004695674 for Cephas' residence at Staples Trace Rd. to Long & Foster totaling $1,750.

35. On December 5, 2011, a DMME official met with Morris Cephas, Sr. regarding the status of the project. At the meeting, the DMME official specifically addressed the program regulation requirement that equipment purchased with grant funds could not be sold without DMME authorization. Morris Cephas responded by knowingly and fraudulently stating to the official that CII maintained possession of the equipment purchased with Recovery Act funds.

36. Throughout the contract period, the defendants knowingly and fraudulently evaded and circumvented federal procurement regulations regarding equipment disposition delineated in CFR, Title 10, Part 600.321, and never requested disposition instructions concerning the equipment purchased with the Recovery Act grant award funds.

37. On May 16, 2013, in a telephone conversation with a DMME official, defendant Morris Cephas, Sr. made false statements as to the location of the heavy construction equipment purchased with grant funds and which the defendant Morris Cephas, Sr. then knew had been illegally sold without DMME approval earlier, and in violation of CFR, Title 10, Part 600.321, and the sales proceeds misappropriated by the defendant Cephases for their personal benefit.

**Loss to Program**

38. The total amount of federal funds converted by the defendants for personal use from the program grants was $340,477.11.

[10]

39. In May 2013, DMME learned the development of a recycling processing center required by the grant had never materialized, and further CII was no longer operational.

40. The defendants have not repaid the grant funds.

**Attempted Obstruction of Federal Investigation**

41. On November 16, 2014, the defendant Cephases, with their attorney present, were voluntarily interviewed by a Department of Energy Office of Inspector General (DOE-OIG) special agent concerning the circumstances of the grant, use of the awarded funds, and the location and disposition of equipment described and set forth above.

42. During this interview, the defendants knowingly and fraudulently, and with intention to deceive the DOE-OIG special agent falsely stated that;

    a. the excavator cost was $228,764; and,

    b. the $184,241 actually paid the dealer was a deposit rather than the actual purchase price.

(All in violation of 18 U.S.C. §§ 371.)

## COUNT 2
### (False Claim)

THE GRAND JURY FURTHER CHARGES:

43. Paragraphs 1 through 42 of this Indictment are realleged as if fully set forth herein.

44. On or about July 2, 2012, in the Eastern District of Virginia and within the jurisdiction of this Court, the defendants by and on behalf of CII, did make and present to a department and agency of the United States a claim upon and against the United States knowing such claim to be false, fictitious and fraudulent, being Invoice #4: CII to DMME for $20,387.44 in recovery Act

funds regarding the alleged payment to subcontractor not actually ever paid:

(All in violation of 18 U.S.C. §§ 287 and 2.)

## COUNT 3
### (Theft of Government Property)

THE GRAND JURY FURTHER CHARGES:

45. Paragraphs 1 through 44 of this Indictment are realleged as if fully set forth herein.

46. On or about October 13, 2010, in the Eastern District of Virginia and within the jurisdiction of this Court, the defendants did embezzle, steal, purloin, receive, retain, knowingly convert to their use, and dispose, without authority, money and things of value of an agency of the United States as specified below, and received, concealed and retained the same with intent to convert it to their use and gain knowing it to have been embezzled, stolen, purloined and converted, as follows: receipt by CII on October 13, 2010 10 of $417,927.66 paid as a result of submission of Invoice #2 by CII to DMME for $443,161.56 which fraudulently included the false Purchase Quote from JRE regarding excavator purchase for $209,475.

(In violation of 18 U.S.C. §§ 641 and 2.)

## COUNTS 4-7
### (False Statements and Documents)

THE GRAND JURY FURTHER CHARGES:

47. Paragraphs 1 through 46 of this Indictment are realleged as if fully set forth herein.

48. On or about the following dates, in the Eastern District of Virginia and within the jurisdiction of this Court, in a matter within the jurisdiction of the United States Department of Energy, an agency of the United States, the defendants as specifically identified below did knowingly and willfully make and cause to be made, a false, fictitious and fraudulent material

[12]

statement and representation, and presented false fictitious and fraudulent documents, which the defendants then knew to be false and fictitious and fraudulent, each statement being a separate count of this Superseding indictment as indicated.

| COUNT | DATE | DEFENDANT(S) | FALSE STATEMENT |
|---|---|---|---|
| 4 | July 11, 2012 | Chiroya Cephas | Final Report containing false statements regarding status of equipment that the excavator and truck equipment purchased with Recovery Act funds remained in CII's possession. |
| 5 | December 5, 2011 ~~2012~~ [initials] | Morris Cephas, Sr. | During an unscheduled visit by DMME personnel to CII at the Deepwater Terminal address, Morris Cephas, Sr. knowingly and falsely told a DMME official that CII still maintained possession of truck and excavator. |
| 6 | November 6, 2014 | Morris Cephas, Sr. Chiroya Cephas | During a joint voluntary interview with a DOE-OIG special agent (see ¶¶ 40-41 above), Morris Cephas, Sr., and Chiroya Cephas voluntarily provided a purchase quote to the agent reflecting $228,764 Cephas reported giving to DMME for an excavator purchase, and falsely stated this amount was the cost for the excavator |
| 7 | November 6, 2014 | Morris Cephas, Sr. Chiroya Cephas | During this joint voluntary interview with the DOE-OIG agent, Morris Cephas, Sr., and Chiroya Cephas conceded that check # 97 was written to JRE for $184,241 for the excavator, but falsely stated it was a deposit on the cost of the equipment totaling $228,764 |

(In violation of 18 U.S.C. § 1001).

## COUNTS 8-9
### (Fraudulent Monetary Transactions)

THE GRAND JURY FURTHER CHARGES THAT:

49. Paragraphs 1 through 48 of this Indictment are realleged as if fully set forth herein.

50. On or about the dates and in the amounts set forth below, the defendants Morris Cephas, Sr. and Chiroya Cephas knowingly participated in the transfer of the criminally derived proceeds of a specified unlawful activity, that is, the aforesaid scheme and artifice to deprive the U.S. Department of Energy of money and property in violation of Title 18, United States Code, Section 641, as specified in Count Three above, within the Eastern District of Virginia, *and the jurisdiction of this court* and there and then did knowingly engage and cause another to engage in the following monetary transactions, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000.00 and was derived from said specified unlawful activity:

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|---|---|---|---|
| 8 | January 18, 2011 | $80,000 | Defendants Morris Cephas, Sr. and Chiroya Cephas deposited the check from unauthorized resale of the equipment specified above into a non-Recovery Act related Cephas Contracting account ending in account number 6482 |
| 9 | April 5, 2011 | $23,500 | Defendants Morris Cephas, Sr. and Chiroya Cephas deposited the check from unauthorized resale of equipment specified above into a non-Recovery Act related Cephas Contracting account ending in account number 6482 |

(In violation of 18 U.S.C. §§ 1957 and 2).

## FORFEITURE ALLEGATION

51. Upon conviction of the offenses in violation of 18 U.S.C. § 641 as set forth in Count ~~One and Four through Twenty-Two~~ Three of this Indictment, the defendants shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. §2 461(c), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations.

52. Upon conviction of the offenses in violation of 18 U.S.C. § 1957 as set forth in Counts 8 and 9 of this Indictment, the defendants, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in the offense, and any property traceable to such property.

If any of the property described above, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

(All pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and 28 U.S.C. § 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.)

[15]

A TRUE BILL:  Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office

_____
FOREPERSON

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____
S. David Schiller
Assistant United States Attorney